UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In the Matter of the Claim of:  :   Docket No. 1:10-CIV-8241
RONALD DAVIS,
                                :
             Plaintiffs,            **AMENDED COMPLAINT**
   -- against --
                                :
THE CITY OF NEW YORK and
PRISON HEALTH SERVICES, INC.
                                :
             Defendants.

---------------------------------------------------------------x

Claimant-Plaintiff RONALD DAVIS ("Plaintiff" or "Mr. Davis"), by his attorneys, alleges as follows for his Complaint:

## INTRODUCTORY STATEMENT

This is an action for damages arising under the United States Constitution and the laws of the State of New York. Defendants violated the rights of Ronald Davis, the Plaintiff, under the Eighth Amendment of the Constitution, the Monell Doctrine (*Monell v. Department of Social Services of the City of New York*, 436 U.S. 658; 98 S.Ct. 2018 (1978) and the laws of the State of New York when knowingly and with deliberate indifference to his constitutional rights, they denied him reasonable medical treatment for a serious medical condition, thereby causing him extensive pain and suffering. Defendants' conduct under color of state law proximately caused the deprivation of Mr. Davis's federally protected rights. Defendants' conduct, done willfully and wantonly, and recklessly also gives rise to § 1983 claims as there is a pattern of conduct in

this and other cases. Defendants' reckless actions resulted in life threatening consequences to Mr. Davis's health.

This is an action brought by Ronald Davis, individually and potentially together with or on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. At the close of discovery and upon the potential certification of a class pursuant to Rule 23 ( c), the plaintiff will request the appointment of class counsel under rule 23(g) other than this plaintiff's counsel in order to advance this cause to a proper conclusion[1].

## I. JURISDICTION, PARTIES AND VENUE

1. Petitioner, Ronald Davis, resides at 238 146th Street, Apartment 2A, New York.

2. At all pertinent times mentioned herein, Plaintiff Ronald Davis was a citizen of the United States of America and a resident of New York.

3. At all pertinent times mentioned herein, Defendant, Prison Health Services, Inc. ("PHS"), was a company doing business in the state of New York and performing the traditionally state governmental function of operating the prison health services through contractual relationships with the City and State of New York. Defendant PHS knew of, supported, adopted, approved and ratified the policy, custom, or practice of ignoring and violating the constitutional rights of Mr. Davis and other similarly situated plaintiffs. PHS, a private operator of the health services in Manhattan Detention Complex, is not a healthcare professional or healthcare institution.

---

[1] Due to the fact that discovery has not started, permission is being sought to potentially later amend this complaint to include causes of action pursuant to Rule 23( c), class certification.

4. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331, 1343 and 2201. Jurisdiction supporting Mr. Davis's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

5. Venue lies in this Court pursuant to 28 U.S.C. § 1391. All of the events alleged herein occurred within the State of New York, and Mr. Davis is a resident of the State.

## II. STATEMENT OF FACTS

6. Mr. Davis is a kidney transplant patient. Kidney transplants are performed in patients in the end-stage of renal disease. They must take immunosuppressive anti-rejection drugs for as long as the patient has a functioning transplant and must be constantly monitored by a physician. Failure to do so could result in the rejection of the kidney from the body and result in life threatening consequences. Prior to his arrest, Mr. Davis had been taking about 13 different drugs, many of them twice a day to ensure that his kidney remained fully functioning

7. On October 13, 2009, at approximately 8:00 in the morning, Mr. Davis was arrested in his home. Upon information and belief, Mr. Davis had informed the police officer's that he was a kidney transplant patient and needed to take his medication twice a day at a specific time.

8. Upon information and belief, the police officers told Mr. Davis to take his medication prior to being taken to the Precinct from his apartment. They told Mr. Davis that upon arrival he would be able to see a doctor and at that point in time he would be given his medication.

9. Upon information and belief, Mr. Davis was transported to the 32nd Precinct and held in the cell for approximately six to seven hours, still waiting to see a physician and receive his medication.

10. Afterward, Mr. Davis was transported to central booking located in Downtown, Manhattan, still without his medication and without being examined by a physician.

11. Upon information and belief, in central booking Mr. Davis again, informed the police officer's that he was a kidney transplant patient in dire need of his medication. The police officer once again assured and misled Mr. Davis, and stated that Mr. Davis need not worry, he was going to be seen by a doctor and that is why he was being taken upstairs.

12. Instead of seeing a physician, Mr. Davis was placed in a holding cell waiting to be arraigned.

13. Upon information and belief, Mr. Davis repeatedly told the officer that he needed his medication. The officer assured Mr. Davis that he would be seen by a doctor. However, Mr. Davis was not seen by a physician and he was kept inside the holding cell until October 14, 2009.

14. Upon information and belief, Mr. Davis began feeling increasingly stressed and worried because he knew the dire consequences that could result from not taking his medication and was afraid that his body was going to reject his kidney.

15. Upon information and belief, the following day, on October 14, 2009, Mr. Davis felt weak and dizzy. His legs were swollen and his legs were trembling, however he was not taken to see the physician.

16. On October 14, 2009, at approximately 2:00 in the afternoon Mr. Davis was brought before the judge. His assigned attorney, Ms. Abromowitz had informed the judge that

Mr. Davis was in dire need of medical attention.[2] The judge did nothing in regards to Mr. Davis's medical needs.

17. After being arraigned, approximately 32 hours after Mr. Davis had taken his medication at home, he was escorted back to his cell and he was denied access to a physician and proper medical treatment.

18. Upon information and belief, Mr. Davis symptoms of nervousness continued and he was continuously lightheaded.

19. Despite numerous and continuous complaints that Mr. Davis made about his legs feeling weak, his swollen ankles, and dizziness, all resulting from the defendant's failure in allowing Mr. Davis access to a physician, the Defendants' still denied him the opportunity to see a physician.

20. Upon information and belief, Mr. Davis was given the opportunity to see a physician on October 15, 2009. He informed the doctor of his medical history and about the medications he was taking. The facility did not have the medications in stock and Mr. Davis was told that he would have to wait another day before they would be able to provide him with the necessary medications.

21. Upon information and belief, Mr. Davis informed the doctor of his deteriorating health condition, that he felt weak, lightheaded and that his legs and ankles were trembling and swollen. The doctor did examine his lower extremities but he did not recommend or treat Mr. Davis.

---

[2] Ms. Abromowitz had stated to the Court that Mr. Davis was a dialysis patient and not a kidney transplant patient. However, in either circumstance she did inform the judge that Mr. Davis needed to see a doctor immediately and needed to take his medication, nor did the court mark the file "Medical" on its own accord, something which is done as a matter of course in this and other jurisdictions when a defendant is seriously ill.

22. On October 15, 2009, Mr. Davis was transported from Downtown, Manhattan to Queens. He remained in Queens until approximately 11 P.M. or Midnight. While in the Queens facility, he again stated that he was a kidney transplant patient and was in dire need of his medications, that he felt weak and his feet were swollen. The personnel told Mr. Davis he must wait until he is transported back to the Downtown, Manhattan facility to be given treatment. Subsequently, on October 16, 2009 he arrived back to the Downtown, Manhattan facility.

23. Upon information and belief, on October 16, 2009, Mr. Davis was seen by a medical doctor in the Manhattan detention facility. He expressed his pain and his problem and that he needed to take his medication. The doctor informed Mr. Davis that though initially they were supposed to receive his medications, they did not receive his medication.

24. At approximately 11:30 P.M. on October 16, 2009, 87 hours after Mr. Davis last took his medication at home he was transferred to Bellevue Hospital Prison Ward ("Bellevue"). Upon arrival, Mr. Davis had informed the doctors of his medical history and the doctors at Bellevue had taken a biopsy of the transplanted kidney.

25. On October 17, 2009, approximately four days after Mr. Davis was initially taken into custody, he was given his life-sustaining medication.

26. Mr. Davis remained in Bellevue for approximately two weeks due to the negligent care he received while in the custody of the state. He was then transferred to Mount Sinai Hospital for an additional seven days of treatment. He was finally released from custody of the state and from the hospital on November 6, 2009.

27. Newly received medical information indicates that Mr. Davis will need a new kidney within three years as a direct result of his failure to receive proper medical attention during the aforementioned time period.

## III. FIRST CAUSE OF ACTION: FEDERAL CLAIMS

28. At all times material, there was in full force and effect in the United States of America, the following provision of the Constitution of the United States.

**Amendment XIV**

**Section 1.** ... nor shall any State deprive any person of life, liberty, or property without due process of law; ...

29. At all times material, there was in full force and effect in the United States of America a certain statute commonly referred to as the Civil Rights Act of 1871, 42 U.S.C: § 1983 which provided:

**§ 1983 Civil Action for Deprivation of Rights**

Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileged or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress...

30. Mr. Davis had an interest in liberty and life in receiving necessary medical care while confined at the Metropolitan detention facility protected by the substantive guaranty of due process of law of the Fourteenth Amendment.

## IV. SECOND CAUSE OF ACTION: MR. DAVIS'S EIGHTH AMENDMENT RIGHTS.

31. The claimant repeats paragraphs 1-30.

32. The acts or omissions of Defendant PHS caused Mr. Davis damages in that he suffered extreme physical and mental pain during the four days he was held in a holding cell, unable to take his medication and denied access to a physician. He suffered from swollen legs

and ankles, weakness, and dizziness for three days before being given the opportunity to be examined by a physician. Even upon examination, PHS failed to provide any medical care or treatment. They only transferred Mr. Davis to Bellevue, to receive proper care, four days after Mr. Davis had been in their custody though they knew of his sensitive and dire condition and the possibility that Mr. Davis's kidney could have completely stopped functioning.

33. The actions of Defendant, New York City and its agents, servants and/or employees and in particular, the defendant PHS as described herein intentionally deprived Mr. Davis of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages.

34. Plaintiff incorporates all other paragraphs of this Complaint for purposes of this claim.

35. Administration, management and operation of a prison are traditionally State and City functions.

36. Upon information and belief, defendant PHS was under contract with the New York City Department of Health and Mental Hygiene (NYC Health), an entity of the State of New York, to administer, manage and operate the Metropolitan Detention Complex.

37. At all times relevant to the allegations in this complaint, Defendants acted or failed to act under color of state law.

38. Defendants had a custom, policy, pattern or practice of acting knowingly and with deliberate indifference in denying obviously necessary medications, medical services, and hospitalization to inmates at the Metropolitan Detention Complex, including Mr. Davis.

39. Defendants all knew of Mr. Davis's potentially life-threatening medical condition. They also knew that various medications were prescribed for ensuring his kidney

remains functional, that Mr. Davis had repeatedly requested his medication be given to him, and repeatedly informed countless number of officers that he needed to take his medication twice a day. He was not provided the medication for four days while in their custody. Nevertheless, with deliberate indifference to Mr. Davis's Eighth Amendment constitutional right to be free of cruel and unusual punishment, these Defendants made no effort to obtain the necessary medications for him when he requested it, even when the judge became aware of his medical needs or at any time before he was transferred to Bellevue.

40. Defendants also failed to examine, treat and care for Mr. Davis's worsening condition with his swollen legs, ankles, and increased stress levels. They did so in spite of his obvious serious medical needs, placing him at risk of substantial physical harm.

41. The acts or omissions of Defendants were the legal and proximate cause of Mr. Davis's injuries.

42. Defendant PHS's unconstitutional policies, customs or practices, as described herein, were the legal and proximate cause of Mr. Davis's injuries.

43. The actions of Defendants as described herein intentionally deprived Mr. Davis of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages.

## V. THIRD CAUSE OF ACTION: NEGLIGENT MEDICAL CARE AND TREATMENT

44. The claimant repeats paragraphs 1-43.

45. This is a claim for personal injuries sustained by the claimant as a result of the negligence of the New York City Department of Corrections, New York City, its officers, agents or employees, and outside medical specialists under contract with New York City, in

failing to provide medical treatment to the claimant.

46. The defendant failed to exercise its duty to provide reasonable care and diligence in affording proper medical care and they failed to provide Mr. Davis with the proper medications.

47. Defendant's had a duty to provide reasonable medical care and treatments to inmates at Metropolitan Detention Center, including Mr. Davis. The defendants had a duty to examine Mr. Davis and administer Mr. Davis's medications, knowing of the substantial risk of kidney failure that might result from not receiving his medications. PHS officials knew they did not have the medication and yet they delayed the necessary treatment though they were fully aware of Mr. Davis's condition and that he had not taken his medication for four days. They knew Mr. Davis takes his medication twice a day each and every day. They failed to promptly treat him once the officers were aware of his condition and furthermore, Mr. Davis's attorney informed the judge Mr. Davis's medical needs. Yet, these requests were ignored.

48. Defendants breached their duty of care while plaintiff was under their custody and control and were negligent when they failed to provide Mr. Davis the opportunity to be seen by a doctor given the seriousness of his condition. They were negligent in failing to obtain necessary medication and emergency medical treatment.

49. Defendants' negligence proximately caused Mr. Davis's significant physical and mental pain and suffering and other damages in the four days he was in the custody of the City.

50. As a direct and proximate cause of Defendants' negligence Mr. Davis suffered significant pain, suffering, loss of comfort, and other damages. Mr. Davis continues to suffer physical pain and discomfort. He has to be examined on a weekly basis to ensure that his kidney remains functioning. He had to undergo a complete change in the regiment of his medication due

to the negligent actions of Defendants. All the above damages were directly and proximately caused by the aforementioned negligence of the Defendants and were incurred without contributory negligence or assumption of the risk on the part of the Plaintiff.

## VI. THIRD CAUSE OF ACTION: INTENTIONAL DELAY OF CARE AND TREATMENT

51. The claimant repeats paragraphs 1-50.

52. Mr. Davis received inappropriate medical attention from the physicians at the Manhattan Detention Complex and the New York City Department of Corrections.

53. The defendant's employees, agents, officers, and contracting physicians delayed Mr. Davis's receipt of his medication and proper medical treatment.

54. Mr. Davis was denied access to a physician and proper medical treatment.

55. Defendant's failed to use the services of necessary medical personal at an earlier time, though they knew that Mr. Davis is a kidney transplant patient in the end-stage of renal disease. They had notice and were fully aware that Mr. Davis must take immunosuppressive anti-rejection drugs to keep his kidney functioning, and that he must be constantly monitored by a physician. Failure to do so could result in the rejection of the kidney from the body and result in life threatening consequences.

## VII. THE MONELL DOCTRINE

56. The claimant repeats paragraphs 1 - 55.

57. Mr. Davis and other similarly situated plaintiffs have been repeatedly deprived of medical attention by the defendant's employees, agents, officers and contracting physicians.

58. Defendants have a custom, policy, pattern or practice of acting knowingly and with deliberate indifference in denying obviously necessary medicines, medical services, and hospitalization to inmates at the Metropolitan Detention Complex, including Mr. Davis.

59. The conduct has resulted in Mr. Davis requiring a new kidney within three years and others similarly situated being deprived of medical treatment and treatment resulting in exacerbated medical condition after being deprived by defendants of necessary medical treatment and medication.

## VIII. NOTICE OF INTENTION AND TIME OF FILING

60. The claimant repeats paragraphs 1-59.

61. Notice of Intention to file this claim was filed in the office of the Clerk of the Comptroller, City of New York on January 7, 2010.

62. This claim was filed within 90 days after the claim accrued, as required by law.

## IX. INJURIES AND DAMAGES

63. Mr. Davis became infected, could not walk, and was not provided medical treatment until he was sent to Bellevue on or about October 16, 2009 at 11:30 P.M., after approximately three days without his medications. Mr. Davis was finally given his medication on or about October 17, 2009.

64. The claimant has suffered and will suffer extreme physical and mental pain as a result of the defendant's negligence. During the approximately four days he was without his medication, the claimant was exposed to a high risk of losing the functionality of his kidney.

65. Plaintiff continued to suffer while he was treated at Bellevue Hospital and subsequently at Mount Sinai Hospital until his release from the hospital on November 6, 2009.

66. That after his release from the hospital the defendant continued to suffer the ill effects from not receiving his life sustaining medication and was required to move about and remain connected to an IV (intravenous fluid) to continue his treatment for recuperation. This continued for another 28 more days.

67. The plaintiff continues to suffer the ill effects of not receiving his medication as his kidney is not at its normal level and not functioning in the same manner it did before the aforesaid incident.

68. Plaintiff verily believes that the damage suffered to his kidney is of a permanent and lasting nature. Recently it was determined by plaintiffs own medical experts that as a proximate cause of the defendants' actions he will require a new kidney within three years; that he will require early dialysis treatment and that his life expectancy has been significantly shortened.

**WHEREFORE**, the plaintiff requests that this Court enter judgment in its favor and against Defendants, and grant:

(a) Appropriate declaratory and other injunctive and/or equitable relief;
(b) Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;
(c) All economic losses on all claims allowed by law;
(d) Attorney fees and the costs associated with this action on all claims allowed by law;
(e) Pre- and post-judgment interests at the lawful rate; and
(f) Any further relief that this Court deems just and proper, and any other relief as allowed by law.

PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.

Dated: New York, New York
August 26, 2011

_____
THOMAS F. LIOTTI, ESQ.
LAW OFFICES OF THOMAS F. LIOTTI
600 Old Country Road, Suite 530
Garden City, New York 11530
(516) 794-4700

_____
JOSEPH F. DEFELICE, ESQ.
LAW OFFICES OF JOSEPH F. DEFELICE
125-01 Queens Boulevard, Suite 302
Kew Gardens, New York 11415
(718) 261-3358